# AFFIDAVIT IN SUPPORT OF
# A CRIMINAL COMPLAINT

I, Donald August Mockenhaupt, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

Your affiant is a Special Agent with the Federal Bureau of Investigation ("FBI"). I am currently assigned to the Washington Field Office, Northern Virginia Resident Agency. I am on a squad that investigates darknet related narcotics trafficking and I have been assigned to this squad since February 2019. I have been a Special Agent since February 2002.

Currently, I am a tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021. As a Special Agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, detention, investigation, or prosecution of a violation of Federal criminal laws.

The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is being submitted for the sole purpose of establishing probable cause that on January 6, 2021, DUKE EDWARD WILSON (WILSON) violated Title 18 U.S.C. Sections 111(a)(1) (assaulting a federal agent); 231(a)(3) (civil disorders), 1752(a)(1) and (2) (unlawful entry on restricted buildings or grounds), 1512(c)(2) (obstruction of an official proceeding); and Title 40 U.S.C. 5104(e)(2)(D) & (G) (violent entry, disorderly conduct, and other offenses on capitol grounds). This affidavit, therefore, does not contain every fact known to me regarding this investigation.

## BACKGROUND

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the

House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway, and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

**PROBABLE CAUSE**

During the course of the investigation, I reviewed numerous video recordings. For the basis of this affidavit, I relied on: (1) three video recordings publicly posted on YouTube, (2) video recordings obtained from two law enforcement body cameras and (3) recordings from a surveillance camera located on the U.S. Capitol grounds. Additionally, I interviewed officers from the U.S. Capitol Police and the Metropolitan Police Department.

I was assigned to identify and locate the defendant who was listed as BOLO (Be On the Look-Out) #87 and investigate his activities while at the U.S Capitol. The individual designated as BOLO #87 was subsequently identified as DUKE EDWARD WILSON, a resident of Nampa, Idaho.

In the video recordings, I observed the individual later identified as WILSON wearing a dark colored jacket with a long sleeved blue shirt underneath and a purple and white baseball hat that read, "CNN" with the words "FAKE NEWS" underneath it. There are portions of the recordings where WILSON's hat was knocked off, but he then put it back on.

Based on video review, the individual later identified as WILSON entered the lower west terrace tunnel area of the U.S. Capitol building shortly before 3 pm while rioters were pushing against law enforcement officers in an attempt to gain entry into the building. Rioters appeared to spray liquid irritants toward the officers as they pushed on the officers' shields. WILSON made his way to the front line of the officers. As officers tried to close a set of double doors, WILSON grabbed and tried to pull the door open. WILSON then raised what appeared to be a tablet device in order to deflect the spray of an irritant. WILSON was sprayed with the irritant by officers. WILSON picked up a several foot long white cylindrical object, believed to be a thin polyvinyl chloride (PVC) pipe, and he jabbed the officers with it. WILSON then raised the object above his head and tossed it at the officers. WILSON lingered in the tunnel. Shortly after a rioter stated, "Send the shield back, send the shield back" and "Take the God damn shield," WILSON appeared to assist other rioters in pulling a shield away from the officers. In the skirmish, WILSON pushed two officers to the ground. WILSON then pushed on an officer's shield as the rioters kept pushing against the officers. WILSON was observed in the tunnel for approximately 14 minutes. WILSON was also observed in the crowd outside of the tunnel raising a flashlight and it appeared that this occurred after his altercation with the officers.

The following screenshots were obtained from the recordings and depict some of the aforementioned activity:

 

WILSON in the tunnel                                              WILSON pushing on shield


WILSON pulling on door


WILSON raising tablet


WILSON holding pipe/pole


WILSON holding pipe/pole (opposite view)



WILSON raising pipe/pole



WILSON tossing pipe/pole



WILSON tossing pipe/pole (opposite view)



WILSON in the tunnel

I obtained a driver's license photograph of WILSON and compared it to the videos and the screenshots above, and concluded that they appear to be the same person.

As previously stated, I interviewed several law enforcement officers who interacted with the individual later identified as WILSON while in the tunnel in the U.S. Capitol on January 6, 2021. Prior to and/or during my interviews with the officers, they reviewed video clips of the events and I directed them to focus on the individual later identified as WILSON's actions. I did not tell the officers WILSON's identity, rather I told them the physical description of WILSON.

Officer-1 is a sergeant with the U.S. Capitol Police Department. Officer-1 identified himself in the video and stated that the individual later identified as WILSON punched him, pushed on his head, pushed on his shield and hit him with a pole in the shoulder. Officer-1 had a shield, but he held it low because rioters had been striking officers in the legs and groin.

Officer-2 is a detective with the Metropolitan Police Department. I identified Officer-2 in the video based on the number on his helmet and he further identified himself by telling me about his uniform that day and a unique item that was on his vest. Officer-2 stated that he was pushed down to the ground by the individual later identified as WILSON. Officer-2 did not know at the time who pushed him, but after reviewing the video, he stated that he now knew that it was the individual later identified as WILSON.

Officer-3 is an officer with the Metropolitan Police Department. I contacted Officer-3 after another officer who was in the tunnel provided me with Officer-3's identity. Officer-3 identified himself in the video. Officer-3 initially did not recall seeing the individual later identified as WILSON as it was a very chaotic day. Additionally, Officer-3 stated that he fell back, but he was not pushed to the ground. After watching a video, Officer-3 recalled falling backwards and he stated that it looked like he was pushed down. I know from the video review that Officer-2 and Officer-3 were pushed down to the ground at the same time.

On January 27, 2021 Special Agents with the FBI Salt Lake City Division Boise Resident Agency conducted a consensual interview with one of WILSON's neighbors. The neighbor was shown WILSON's Idaho driver's license photo and was asked if he knew this person. The neighbor positively identified the photo as his neighbor, WILSON. The neighbor was shown photograph #87-AFO from the FBI's Seeking Information bulletin and the neighbor positively identified WILSON in that photo. The neighbor was asked if he knew WILSON was at the U.S. Capitol on January 6, 2021, and he advised that he knew WILSON was there, and that Wilson was heading to Washington, DC to attend the Rally at the Capitol. The neighbor advised that WILSON returned very late in the evening on January 7, 2021.

Based on the foregoing, your affiant submits that there is probable cause to believe that WILSON violated 18 U.S.C. § 1752(a)(1) and (2), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Your affiant submits there is also probable cause to believe that WILSON violated 18 U.S.C. § 111(a)(1), which makes it a crime to forcibly assault, resist, oppose, impede, intimidate, or interfere with any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance.

Your affiant submits there is also probable cause to believe that WILSON violated 40 U.S.C. § 5104(e)(2)(D) & (G), which makes it a crime to willfully and knowingly (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; and (G) parade, demonstrate, or picket in any of the Capitol Buildings.

Your affiant submits there is probable cause to believe that WILSON violated 18 U.S.C. § 1512(c)(2), which makes it a crime to obstruct, influence, or impede any official proceeding, or attempt to do so. Under 18 U.S.C. § 1515, congressional proceedings are official proceedings.

Finally, your affiant submits there is probable cause to believe that WILSON violated 18 U.S.C. § 231(a)(3), which makes it unlawful to commit or attempt to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. For purposes of Section 231 of Title 18, a federally protected function means any function, operation, or action carried out, under the laws of the United States, by any department,

agency, or instrumentality of the United States or by an officer or employee thereof. This includes the Joint Session of Congress where the Senate and House count Electoral College votes.

_____
Donald August Mockenhaupt
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 13th day of April 2021.

_____
ROBIN M. MERIWEATHER
U.S. MAGISTRATE JUDGE